UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――

MAURICE ANTHONY,

                              Plaintiff,

        v.                                                          9:22-cv-113
                                                                    (GLS/ATB)

ORC GREEN et al.,

                              Defendants.
―――――――――――――――――――――――――――

APPEARANCES:

MAURICE ANTHONY
14-A-2070
Plaintiff, pro se
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

GARY L. SHARPE
Senior United States District Judge

**DECISION AND ORDER**

I.      **INTRODUCTION**

        Plaintiff Maurice Anthony commenced this action by filing a pro se civil rights

complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), Title II of the Americans With

Disabilities Act, 42 U.S.C. §§ 12101-213 (ADA), and Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. §§ 701-96*l* (hereinafter "Rehabilitation Act"), together with an application for

leave to proceed in forma pauperis (IFP).  Dkt. No. 1 ("Compl."); Dkt. No. 11 ("IFP

Application").[1]  By Decision and Order entered on May 3, 2022, plaintiff's IFP Application was granted, but following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), this Court found that it was subject to dismissal for failure to state a claim upon which relief may be granted.  Dkt. No. 12 ("May 2022 Order").  In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint.  *Id*. at 14-16.

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 18 ("Am. Compl.").

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    The Complaint and May 2022 Order

In his original complaint, plaintiff asserted claims against the following officials based on allegations that he was denied certain accommodations, and improperly punished, during his incarceration at Mid-State Correctional Facility ("Mid-State C.F."), as a convicted prisoner in the custody of the New York State Department of Corrections and Community Supervision (DOCCS): (1) ORC Green; (2) ORC Piersma; (3) ORC Williamson; (4) ORC Bueler; (5) ORC Funk; (6) Lieutenant Klein; (7) Deputy Kosak; (8) Deputy Burns; (9) Sergeant Mayo; (10) ORC Rena; (11) ORC Maltavo;[2] (12) Corrections Officer O'Neil; (13) Corrections Sergeant Marabito; (14) Corrections Sergeant Leone; (15) Mid-State C.F. Superintendent Passage;

---

[1]  Plaintiff filed an initial IFP application with his complaint, which was not properly completed.  By Order entered on February 8, 2022, this action was administratively closed based on plaintiff's failure to comply with the filing fee requirement.  Dkt. No. 4.  Thereafter, plaintiff filed a second IFP application and inmate authorization form, and the Clerk was directed to reopen this action and restore it to the Court's active docket.  *See* Dkt. Nos. 5, 6, 8.  By Decision and Order entered on May 2, 2022, plaintiff's second IFP application was denied as incomplete and he was afforded a final opportunity to either pay the filing fee in full or submit a properly completed and signed IFP application.  Dkt. No. 9.  Thereafter, plaintiff filed his IFP Application, together with prison account statements.  Dkt. Nos. 10, 11.

[2]  The complaint alleged that these eleven defendants comprised the "Program Management Team" ("PMT") at Mid-State C.F.  *See* Compl. at 3.

and (16) First Deputy Superintendent Venettozzi.  *See generally* Compl.

The complaint was construed to assert claims arising under the ADA, the Rehabilitation Act, the Eighth Amendment, and the Fourteenth Amendment.  *See* May 2022 Order at 6.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's claims were dismissed without prejudice for failure to state a claim upon which relief may be granted.  *See* May 2022 Order at 15-16.

### B.    Review of the Amended Complaint

Because plaintiff is proceeding IFP and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) was discussed at length in the May 2022 Order and it will not be restated in this Decision and Order.  *See* May 2022 Order at 2-4.

As with the original complaint, plaintiff's amended complaint alleges wrongdoing associated with the conditions of his confinement at Mid-State C.F.  *See generally* Am. Compl.  The allegations in the amended complaint are materially similar to the allegations in the original complaint, except that plaintiff's new pleading no longer names Corrections Officer O'Neil, Corrections Sergeant Leone, or Corrections Sergeant Marabito as defendants, and provides slightly more detail regarding certain wrongdoing identified in the original complaint.  *Compare* Compl., *with* Am. Compl.  The following facts are set forth as alleged in the amended complaint, or indicated in documents attached thereto.

Plaintiff "suffers from severe visual impairment/legal blindness."  Am. Compl. at 3.

3

According to one of the documents attached to the amended complaint, in late 2019, while plaintiff was incarcerated at Sullivan Correctional Facility, he was approved for large print materials, a guidance cane, magnifiers, a tape player and cassettes, a lamp, and visual sunglasses for indoor use based on his visual impairment.  Am. Compl. at 8.  At some point while plaintiff was confined at Sullivan Correctional Facility, he was also approved for a "talking watch[.]"  Am. Compl. at 4.

On October 7, 2021, plaintiff was transferred to Mid-State C.F. and placed in the "C1 gallery housing unit to participate in the Step Down Program[,]" which is intended to "provide segregated/SHU inmates an opportunity to rehabilitate and be released to [general] population sooner than the expiration of the[ir] SHU/special housing unit sanction[.]"  Am. Compl. 3.  After plaintiff "settled in his cell[,] he requested assistance from several employees about getting his needed accommodations."  *Id.*

Thereafter, plaintiff notified the "PMT defendants" during meetings and while they made rounds that he needed "each accom[m]odating item" that he was provided before his transfer, including indoor sunglasses, which he needed to "protect hi[s] [eyes] from the bright lights[,]" and a "talking watch[,]" which he needed to prepare for count, read and write, and participate in programming.  Am. Compl. at 4.  Plaintiff also notified defendant Passage during rounds that he needed his approved accommodations, including his "talking watch[.]"  *Id.*  Despite plaintiff's communications with defendant Passage and the PMT defendants, he continued to be denied indoor sunglasses, a talking watch, and certain other accommodations that he was previously provided.  *Id.*

During PMT meetings, defendants "would make jokes about plaintiff being blind [and] . . . laugh about it."  Am. Compl. at 4.  Defendants Kosak and Williamson "also informed

plaintiff [that] they personally didn't want any blind people in their program."  *Id.*

According to documents attached to the amended complaint, on October 27, 2021, and on several occasions thereafter, plaintiff was disciplined for refusing to stand for count and covering his overhead light.  Am. Compl. at 11, 18-20, 22, 24.

On November 10, 2021, an attorney from Prisoners' Legal Services of New York wrote a letter to defendant Passage wherein he requested that plaintiff "be provided with all reasonable accommodations necessary to address his visual impairment."  Am. Compl. at 13.  The letter also detailed daily accommodations for which plaintiff was previously approved.  *Id.* at 14.

On November 18, 2021, defendant Klein "authorized officers to take plaintiff's property" based on an allegation that plaintiff had improperly covered his window.  Am. Compl. at 6.  Shortly thereafter, plaintiff was issued a misbehavior report regarding the incident.  *Id.*

On November 29, 2021, plaintiff "had a civil trial in the Court of Claims" that was "scheduled" to begin.  Am. Compl. at 6.  Plaintiff was unable to participate in the trial "because [he] did not have his accommodations[.]"  *Id.*  As a result, a fellow inmate contacted the assigned judge in the Court of Claims proceeding on plaintiff's behalf to advise that plaintiff was unable to participate in his civil trial.  *Id.*  In response, the assigned judge wrote a letter to defendants Venettozzi and Passage wherein he "order[ed]" that plaintiff be provided with necessary accommodations.  *Id.*

On November 30, 2021, defendant Venettozzi sent a letter to the attorney from Prisoners' Legal Services of New York wherein he acknowledged receipt of the attorney's letter, acknowledged that plaintiff "has a medically verified visual impairment for which

[DOCCS] has previously approved numerous daily accommodations[,]" and advised that plaintiff "has been provided with the essential equipment and services that he needs for his daily functioning."  Am. Compl. at 23.  According to plaintiff, despite this representation by defendant Venettozzi, he continued to be denied a "talking watch[,]" and the only accommodation provided to him that worked properly was bold pens, which he received on December 6, 2021, along with an audio book reader, a green hat with a visor, a white lighted magnifier, and a white desk lamp with a bulb.  Am. Compl. at 4, 6, 25.

That same day, defendant Klein found plaintiff guilty of the charges in the misbehavior report he received for covering his light, without allowing him to present a defense or offer evidence showing that he was not afforded the accommodations to which he was entitled. Am. Compl. at 6.  At some point after defendant Klein's disciplinary determination, the "guilty disposition was reversed and vacated" on the grounds that plaintiff had not been provided with "his accommodations."  *Id.*

At some point, the "20/20 pens" provided to plaintiff "died[.]"  Am. Compl. at 6. Although plaintiff informed defendants Funk and Kosak of this issue, he did not receive new pens.  *Id.*  As a result, plaintiff was also unable to litigate an New York CPLR article 78 proceeding, which was dismissed on February 14, 2022, based on his failure to comply with an unidentified deadline.  *Id.*

The amended complaint also alleges, more generally, that defendants improperly used PMT meetings to conduct disciplinary hearings, and failed to afford plaintiff the opportunity to call witnesses or be present during these hearings.  Am. Compl. at 5.  Plaintiff alleges that he was denied "meaningful participation" in programming in order to keep him in restrictive confinement.  *Id.*  Plaintiff also alleges that "most of the time, his commissary buy

6

was limited" in order to "prevent [him] from buying food[.]"  *Id.*

Liberally construed, the amended complaint asserts the following claims against the named defendants in their individual and official capacities: (1) ADA and the Rehabilitation Act claims; (2) First Amendment access-to-courts claims; (3) an Eighth Amendment claim based on the denial of certain disability accommodations[3]; and (4) Fourteenth Amendment due process claims.

The amended complaint seeks monetary damages and injunctive relief.  Am. Compl. at 7.  For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

## C.    Analysis

### 1. Eleventh Amendment Immunity

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");  *see Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity is lost only if Congress unequivocally

---

[3]  Although plaintiff generically alleges that his commissary purchases were "limited" in order to "prevent [him] from buying food[,]" Am. Compl. at 5, the amended complaint lacks any allegations which plausibly suggest that any of the named defendants limited his purchases.  Furthermore, the amended complaint is devoid of any allegations which plausibly suggest that plaintiff was deprived of any of the three daily meals offered to inmates. Thus, the Court does not construe the amended complaint to assert a cognizable Eighth Amendment claim against any of the named defendants based on restricted access to commissary.

abrogates states' immunity or a state expressly consents to suit.  *See Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. New York*, No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (explaining that a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities.")

Accordingly, insofar as plaintiff seeks monetary damages under Section 1983 against any defendant in his or her official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the Eleventh

Amendment.[4]

### 2. ADA and Rehabilitation Act Claims

The legal standard governing ADA and Rehabilitation Act claims was discussed at length in the May 2022 Order, and will not be restated herein.  *See* May 2022 Order at 6-9.

Insofar as plaintiff's ADA and Rehabilitation Act claims are brought against any defendant in his or her individual capacity, these claims are dismissed because, as noted in the May 2022 Order, "neither Title II of the ADA nor Section 504 of the Rehabilitation Act provides for individual capacity suits against state officials."  *See* May 2022 Order at 9 (citing *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)).

Insofar as plaintiff's ADA and Rehabilitation Act claims are brought against the defendants in their official capacities, the Court is mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed,[5] and, therefore, these claims survive sua sponte review and require a response.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. First Amendment Access-to-Courts Claims

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a fundamental right that requires prison authorities to "assist inmates in the preparation and

---

[4] In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. N.Y. State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

[5] *See, e.g.*, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977).  The right of access to the courts is also implicated when a prisoner experiences interference with his mail.  *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The "right of access to the courts" requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds*, 430 U.S. at 828, *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004).[6]  "However, this right is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'"  *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury.  *See Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts."  *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).  Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim.  *Lewis*, 518 U.S. at 349, 351-53

---

[6]  "[A] person's right of access to the courts has been found to arise not only under the First Amendment but under other parts of the Constitution, including the Due Process Clause of the Fourteenth Amendment." *Lasher v. Dagostino*, No. 9:16-CV-0198 (BKS), 2016 WL 1717205, at *4 (N.D.N.Y. Apr. 28, 2016) (collecting cases).

(noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense").  "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that, in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16.  "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted).

"Finally, . . . the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  Rather, the injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement." *Id.* at 355.  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*.

Here, the amended complaint alleges that plaintiff was unable to participate in a civil trial scheduled for November 29, 2021, and suffered the dismissal of his article 78 proceeding in February, 2022 due to a lack of needed accommodations.  *See* Am. Compl. at

6.

      With respect to the trial, the amended complaint lacks any allegations which plausibly suggest that it was altogether canceled, and/or that a judgment was entered that was not in plaintiff's favor.  Indeed, the status, outcome, and subject matter of that proceeding is entirely unknown based on the allegations in the amended complaint.  Thus, the Court has no basis to plausibly infer that plaintiff suffered an "actual injury" with respect to his alleged action previously scheduled for trial.

      Similarly, with respect to plaintiff's article 78 proceeding that was allegedly dismissed, the amended complaint lacks any allegations explaining the nature of that action (including plaintiff's reasoning as to why it was not frivolous), the grounds for dismissal, or plaintiff's efforts to re-open the proceeding or appeal the alleged dismissal.  Instead, the amended complaint alleges only that the action was dismissed after plaintiff failed to respond to a deadline set for February 14, 2022.  Am. Compl. at 6.  However, it is entirely plausible based on the lack of detail in the amended complaint that the deadline was for plaintiff to respond to a dispositive motion, which was thereafter granted on the merits.  In other words, plaintiff has also failed to allege facts which plausibly suggest that he suffered an "actual injury" with respect to his dismissed article 78 proceeding.

      Accordingly, plaintiff's First Amendment access-to-courts claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 4.  Eighth Amendment Claim

      The legal standard governing an Eighth Amendment conditions-of-confinement claim was discussed at length in the May 2022 Order, and will not be restated herein.  *See* May

2022 Order at 9-12.  The Court will add only that in addressing a conditions-of-confinement claim based on an alleged failure to provide disability accommodations that interfered with an inmate's ability to participate in normal activities and comply with facility rules and regulations, the Second Circuit recently analyzed the claim, albeit in an unpublished decision, under the standard for deliberate indifference to a serious medical need.  *See McFadden v. Noeth*, 827 F. App'x 20, 27-28 (2d Cir. 2020).

In any event, at this stage of the proceeding, and mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, plaintiff's Eighth Amendment claim survives sua sponte review and requires a response.  In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 5.  Fourteenth Amendment Due Process Claims

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process.  *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)).  An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Connor*, 515 U.S. 472, 484 (1995).  Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest.  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

Insofar as the amended complaint may be construed to reassert a due process claim based on discipline imposed on plaintiff by defendant Klein or other PMT defendants, plaintiff

13

has failed to indicate what punishment he received as a result of defendant Klein's disciplinary determination, which was eventually reversed, and the documents attached to the amended complaint show that the sanctions imposed by the PMT defendants were limited to privilege restrictions for brief periods of time.  *See* Am. Compl. at 11, 18-20, 22, 24. Thus, plaintiff has failed to adequately allege that he suffered a deprivation of a liberty interest as a result of discipline imposed on him by defendant Klein or other PMT defendants.  *See, e.g.*, *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 277 (N.D.N.Y. 2018) ("[The plaintiff] claims that he was deprived of personal property, hygiene products, stamps, and commissary for fourteen days. . . . Additionally, [the] plaintiff asserts that his cell did not have a functioning toilet or running water for four days. . . . As presently pleaded, these facts do not suggest that [the plaintiff] was deprived of a liberty interest."); *Rivera v. Goord*, No. 9:05-CV-1379 (GLS/GHL), 2008 WL 5378372, at *2 (N.D.N.Y. Dec. 22, 2008) ("[T]he loss of privileges which may accompany a term of restricted confinement does not 'give rise to a protected liberty interest under New York law.'" (quoting *Smart v. Goord*, 441 F. Supp. 2d 631, 640 (S.D.N.Y. 2006)); *Thompson v. LaClair*, No. 9:08-CV-37 (FJS/DEP), 2008 WL 191212, at *3 (N.D.N.Y. Jan. 22, 2008) (the loss of commissary privileges does not qualify as a serious hardship); *Holland v. Goord*, No. 05-CV-6295, 2006 WL 1983382, *7 (W.D.N.Y. July 13, 2006) (finding seventy-seven days in keeplock during which the plaintiff was deprived of TV, phone, packages, and commissary, and was unable to attend Muslim services and classes, did not constitute a liberty interest); *Pacheco v. Vanwyk*, No. 94-CV-456, 1997 WL 642540, at *2 (N.D.N.Y. Oct. 15, 1997), *aff'd*, 164 F.3d 618 (2d Cir. 1998) (holding that because the plaintiff "did not serve any punishment for . . . the charge that was administratively reversed . . . no constitutional harm relating to the . . . charge

14

occurred as a matter of law"); *Wilson v. Conn. Dep't of Corrs*., No. 20-CV-1567, 2020 WL 7388979, at *12 (D. Conn. Dec. 16, 2020) ("[The plaintiff] has failed to allege that he received any punitive sanctions as a result of the guilty finding after a disciplinary hearing. Accordingly, [the plaintiff] has not raised an inference that he was subjected to a loss of a liberty interest due to any atypical and significant condition of confinement as a result of a lack of due process in connection with his disciplinary hearing." (citation omitted)).

Insofar as plaintiff alleges that the PMT meetings he attended were not "meaningful" and/or that he was denied "meaningful participation" in programming in order to keep him in restrictive confinement, the law is well-settled that inmates do not have a constitutional liberty interest in participating in prison programs. *See, e.g.*, *Nieves v. Prack*, No. 15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. Mar. 24, 2016) ("[Plaintiff's] claim that his inability . . . to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is . . . speculative and fails to allege interference with a protected liberty interest.") (citations omitted); *Thompson v. LaClair*, No. 08-CV-0037 (FJS/DEP), 2009 WL 2762164, at *5 (N.D.N.Y. Jan. 30, 2009) ("Courts considering inmate claims regarding [the] denial of participation in or access to prison programs or privileges under *Sandin* have uniformly concluded that inmates do not enjoy a protected liberty interest in such aspects of prison life."), *report and recommendation adopted by* 2009 WL 2762164 (N.D.N.Y. Aug. 25, 2009).

Further, to the extent plaintiff alleges that his inability to participate meaningfully in programming interfered with his ability to advance through the Step Down Program and obtain his earliest possible release to general population, his allegations are entirely conclusory.  For example, it is unclear from the amended complaint (1) when plaintiff was

15

first placed in restrictive confinement, (2) how long plaintiff was initially scheduled to be in restrictive confinement, (3) what target date was initially set for plaintiff's release from restrictive confinement, or (4) how long plaintiff ultimately spent in restrictive confinement.  It is also unclear from the allegations in the amended complaint (1) what the PMT meetings entail, or (2) how, if at all, plaintiff was punished or prevented from advancing through the Step Down Program as a result of an alleged lack of accommodations.  Thus, the Court has no basis to plausibly infer from the allegations in the amended complaint that plaintiff's inability to participate, to his satisfaction, in programming imposed an "atypical and significant hardship" on him in relation to the ordinary incidents of prison life.  *See Animashaun v. Fischer*, No. 9:19-CV-0820 (LEK/DJS), 2020 WL 374578, at *17 (N.D.N.Y. Jan. 23, 2020) (expressing doubt as to whether an inmate has "a protected liberty interest in participating in the 'Step-Down Program,'" and finding, regardless, that "a brief denial of plaintiff's progression through the program, which allegedly only had the effect of prolonging his SHU confinement and lack of access to commissary buy privileges by one week, did not impose an 'atypical and significant hardship' on plaintiff").[7]

Finally, insofar as the amended complaint may be construed to assert a due process claim based on the denial of certain accommodations plaintiff requested, in general, the amended complaint lacks allegations that plausibly suggest that plaintiff had a liberty interest in the accommodations he sought.  *See Ward v. LeClaire*, No. 9:07-CV-0026 (GTS/RFT), 2009 WL 6302822, at *14-15 (N.D.N.Y. Sept. 16, 2009) (dismissing due process claim based on allegations that inmate plaintiff filed "a Request for Reasonable Accommodations

---

[7]  The amended complaint also lacks allegations which plausibly suggest that plaintiff was denied the process to which he was entitled with respect to any alleged wrongdoing by the PMT defendants.

pursuant to the ADA, . . . which was denied by Demars, who allegedly failed to forward Plaintiff's request to the medical department for verification of his alleged disability[,]" because plaintiff did not possess a liberty or property interest in his accommodations request), *report and recommendation adopted by* 2010 WL 1189354 (N.D.N.Y. Mar. 24, 2010); *Kearney v. N.Y.S. D.O.C.S.*, No. 9:11-CV-1281 (GTS/TWD), 2013 WL 5437372, at *1, *13-14 (N.D.N.Y. Sept. 27, 2013) (dismissing due process claim based on allegations that DOCCS officials inadequately reviewed and denied plaintiff's reasonable accommodation request for a transfer to a more accessible facility, finding that the plaintiff's "alleged right to be granted a 'medical transfer' to a different DOCCS facility does not constitute a protected liberty interest for purposes of the Fourteenth Amendment" and the complaint did not "allege facts sufficient to demonstrate that [the plaintiff] was denied the desired transfer without due process"), *aff'd sub nom. Kearney v. N.Y. State Dep't of Corr. Servs*., 581 F. App'x 45 (2d Cir. 2014); *see also Hooker v. Simon*, No. 06-CV-00389, 2007 WL 2156171, at *2 (E.D. Cal. July 25, 2007) (dismissing due process claim based on allegations that inmate plaintiff's initial request for an accommodation of his disabilities by way of access to special equipment in the library, including a computer with spelling and grammar check, was granted, and thereafter revoked for retaliatory reasons, because the plaintiff "[did] not have a protected liberty interest in the reasonable accommodation that was granted him"); *Brooks v. Horn*, No. 00-CV-03637, 2004 WL 764385, at *6-7 (E.D. Pa. Apr. 7, 2004) (finding, despite the fact that "the DOC has a procedure that would allow plaintiff to have a hearing for his ADA accommodation requests," that plaintiff had "no constitutional right to an accommodation hearing" because the failure to consider an ADA accommodation request did not "present[ ] the type of atypical, significant deprivation in which a State might conceivably create a liberty

17

interest").

Moreover, even assuming, for the sake of argument, that plaintiff has a liberty interest in the accommodations that he was denied, the amended complaint lacks allegations to plausibly suggest that the procedures in place through which he allegedly requested accommodations and appealed denials of accommodations were insufficient to satisfy the federal Due Process Clause. *See Kearney*, 2013 WL 5437372, at *14.  To the contrary, a review of plaintiff's own allegations and the documents attached to the amended complaint show that several of plaintiff's accommodation requests were granted following his complaints. *See* Am. Compl. at 4, 6, 23, 25.

In light of the foregoing, plaintiff's due process claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

IV. **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint is accepted for filing and is the operative pleading; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's ADA and Rehabilitation Act claims against the named defendants in their official capacities; and (2) plaintiff's Eighth Amendment claim against the named defendants in their individual capacities; and it is further

**ORDERED** that plaintiff's Section 1983 claims for money damages against the named defendants in their official capacities as well as his ADA and Rehabilitation Act claims against the named defendants in their individual capacities are **DISMISSED with prejudice**

18

pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as set forth above[8]; and it is further

**ORDERED** that all remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk shall **TERMINATE** defendants O'Neil, Leone, and Marabito from this action; and it is further

**ORDERED** that, upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with a copy of the amended complaint, to the United States Marshal for service upon defendants Green, Piersma, Williamson, Bueler, Funk, Klein, Kosak, Burns, Mayo, Rena, Maltavo, Passage, and Venettozzi.  The Clerk shall forward a copy of the summons and amended complaint by mail to the New York State Attorney General's Office, together with a copy of this Decision and Order; and it is further

**ORDERED** that, upon the completion of service, a response to plaintiff's amended complaint be filed by defendants Green, Piersma, Williamson, Bueler, Funk, Klein, Kosak, Burns, Mayo, Rena, Maltavo, Passage, and Venettozzi, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United

---

[8] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action.  *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown*, 423 Fed. App'x 77, 78 (2d Cir. 2011).  Because these claims are unavailable, leave to amend to would be futile.

States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

October 4, 2022
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
U.S. District Judge

20